IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
MAR - 9 2001
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

| | |
|---|---|
| GROUP DEALER SERVICES, INC., § <br> d/b/a The Cellular Connection, § <br> § <br> Plaintiff, § <br> v. § <br> § <br> SOUTHWESTERN BELL MOBILE § <br> SYSTEMS, INC., and § <br> SOUTHWESTERN BELL WIRELESS, INC., § <br> § <br> Defendants. § | CIVIL ACTION NO. <br><br> SA-00-CA-0381 OG |

## ORDER

On this day, the court has considered the status of the above-captioned matter. This is a breach of contract case removed from state court on March 24, 2000, pursuant to federal question jurisdiction under the Robinson-Patman Act, 15 U.S.C. § 13(a). Before addressing whether a continuance of the trial date, currently set for April 9, 2001, and a second extension of scheduling order deadlines, are warranted, I find it necessary to discuss the procedural background of this case.

Plaintiff Group Dealer Services, Inc., d/b/a The Cellular Connection (hereinafter referred to as plaintiff/"GDS") filed the state court lawsuit in April of 1998, alleging that defendants, Southwestern Mobile Systems, Inc., and Southwestern Bell Wireless, Inc., (hereinafter collectively referred to as defendants/"SBMS") had, in violation of the Authorized Agency Agreement entered into by the parties on July 31, 1992, wrongfully changed the commission schedule to be paid to Group Dealer Services as one of SBMS' wireless services sales agents. In addition to the breach of contract claim, GDS also alleges an antitrust claim based on price discrimination under §2(a) of the Robinson-Patman Act, and state-based causes of action for common law fraud, tortuous interference

52.

with present and prospective business relationships and conversion of funds. In that regard, GDS also seeks an accounting for the commissions and residuals it claims SBMS owes under the Agency Agreement.[1]

Prior to removing the case to federal court, the state court granted partial summary judgment to SBMS holding that SBMS had the right under the parties' contract to change GDS' commission schedule.[2] Once in federal court, the District Judge to which this case was assigned, issued a Scheduling Order on June 6, 2000 setting, among other pre-trial deadlines, a completion of discovery deadline of September 29, 2000, and October 10, 2000, as the deadline for the filing of dispositive motions.[3] The court in that Order also set the case for trial on December 4, 2000. On September 15, 2000, GDS filed its <u>First</u> Motion for a continuance of the trial date and for an extension of the scheduling order deadlines.[4] GDS' motion for a continuance was premised on its need to complete relevant discovery in the case. SBMS in its response, filed September 22, 2000, did not oppose GDS' request for an extension of the scheduling order deadlines, and indeed submitted proposed deadlines in its response.[5]

While that motion was pending, and in accordance with the June 6, 2000 Scheduling Order, SBMS moved for summary judgment on October 10, 2000, arguing that, as a matter of law, and in light of the law of the case set by the state court concerning the breach of contract claim, GDS cannot

---

[1] Docket Entries 27 & 47.

[2] Docket Entry 27 & Exhibits A & C.

[3] Docket Entry 3.

[4] Docket Entry 20.

[5] Docket Entry 23.

establish its prima facie burden with respect to its remaining state and federal causes of action.[6] GDS' response to SBMS' summary judgment motion was due October 24, 2000.

On October 26, 2000, the court granted GDS' first motion for a continuance, extending the discovery deadline to January 26, 2001, setting February 9, 2001 as the deadline for filing all dispositive motions, and resetting the trial date to April 9, 2001.[7] On that same day, pursuant to an order of referral, the case was assigned to me to aid in the disposition of all pre-trial matters.[8]

On January 26, 2001, the date given by the court as the parties' discovery deadline, GDS filed a second motion for a continuance of the trial date based on its counsel's scheduling conflicts and for an extension of scheduling order deadlines.[9] Again, GDS premised its motion for a second continuance on purportedly needing additional discovery to properly prosecute the case. GDS made no mention of the outstanding motion for summary judgment it had failed to respond in a timely fashion. Although this time around SBMS does not oppose a reasonable extension of the trial date pending the court's consideration of its summary judgment motion, it vehemently opposes any other extension of the scheduling order deadlines, particularly giving GDS another deadline in which to complete discovery.[10]

It appears that during, or subsequent to, mediation, counsel for GDS became aware that it had not responded to SMBS' summary judgment motion. In that regard, on February 6, 2001, GDS

---

[6] Docket Entry 27.

[7] Docket Entry 28.

[8] Docket Entry 29.

[9] Docket Entry 43.

[10] Docket Entry 45.

3

moved for leave to file an untimely response to SBMS' motion for summary judgment, reasserting its second motion for a continuance.[11] In its motion for leave, counsel for GDS appears to argue that the reasons it failed to timely respond to SBMS' summary judgment were SBMS' supposed lack of cooperation in furthering completion of relevant discovery, and counsel's misunderstanding that another firm serving as co-counsel, was the one supposed to prepare a response on behalf of GDS. Curiously, on the next day it filed for leave, GDS submitted, in one pleading, its response to the summary judgment motion, its objections to SMBS and its own motion for reconsideration of the state court order granting partial summary judgment.[12] As expected, SBMS filed an opposition to GDS' motion for leave to file an untimely response, and also filed a motion to strike the response based on untimeliness and undue prejudice.[13]

After having considered the arguments made by counsel, the procedural background noted above and the present posture of the case, it is hereby **ORDERED** that GDS' second motion for a continuance of the trial date and an extension of the scheduling order deadlines (Docket Entry 43) is **GRANTED, IN PART**, with respect to a continuance of the trial date and is **DENIED, IN PART**, to the extent it seeks from the court an extension of the discovery cut-off deadline and/or any other scheduling order deadline. The trial of this cause is now **RESET** to July 16, 2001.[14]

In reviewing the pleadings submitted by counsel, and particularly, SBMS' chronology of discovery, which GDS does not dispute, it appears that GDS has not been reasonably diligent in

---

[11] Docket Entry 46.

[12] Docket Entry 47.

[13] Docket Entry 48.

[14] By a Separate Order, the court will enter the corresponding pre-trial deadlines.

obtaining the discovery it purports to need. For instance, since this lawsuit was filed in state court on April 14, 1998, GDS has only served one set of written interrogatories and requests for production on SBMS. Further, SBMS had made available for GDS' review approximately 58,000 pages of documents. It was not until October 24, 2000 (after the first discovery cut-off deadline set by the court in its June 6, 2000 Scheduling Order) that GDS served its first deposition notices in the case. By GDS' own count, it has already taken twelve depositions in the case, exceeding the amount of depositions to be taken by one party under FED.R.CIV.P. 30. Also, according to SBMS, GDS did not engage in any discovery from December 21, 2000 through January 26, 2001 (the end of the discovery period).[15] GDS general assertions that it needs additional discovery are controverted by its own summary judgment response which relies on the recent discovery obtained in the case to argue that genuine issues of material exist precluding summary judgment in the case.[16] Based on these findings, I conclude that GDS has shown no good cause for an extension of the discovery cut-off deadline or of any other remaining scheduling order deadline. The court, nevertheless, reminds the parties that, according to the June 6, 2000 Scheduling Order, "counsel may by agreement continue discovery beyond the cut-off deadline, but there will be no intervention by the court except in extraordinary circumstances, and no trial setting will be vacated because of information obtained in post-deadline discovery."[17]

With respect to GDS' motion for leave to file an untimely summary judgment response (Docket Entry 46) and SBMS' opposition and motion to strike the same (Docket Entry 48), it is

---

[15] Docket Entry 48, at 5.

[16] Docket Entry 47, at 3 & 10.

[17] Docket Entry 3, at ¶ 6.

hereby **ORDERED** that leave to GDS is **GRANTED** and SBMS' motion to strike is **DENIED**. While it is patently clear that GDS violated the guidelines for the filing of a timely summary judgment response as described in the June 6, 2000 Scheduling Order, as well as Local Rule CV-7(d), in the interests of justice, I will consider GDS' untimely response. As SBMS has stated in its reply to GDS' summary judgment response, the court's consideration of the late response would not be prejudicial to SBMS, because, according to SBMS, it "does not change anything."[18]

Nevertheless, I deem it necessary to sanction counsel for GDS for his inexcusable neglect in filing such an untimely response. Accordingly, pursuant to FED.R.CIV.P. 16(f), counsel for GDS is **ORDERED** to pay SBMS' counsel for his expenses and attorney's fees caused by his non-compliance with the pre-trial guidelines and local rules. In that regard, counsel for SBMS is instructed to submit to the court, within five days from receipt of this Order, a statement accompanied by an affidavit, showing the expenses and reasonable attorneys' fees incurred in preparing its opposition and motion to strike GDS' untimely response.

SIGNED this _9_ day of March, 2001.

*Nancy Stein Nowak* (signature)
**Nancy Stein Nowak**
**U.S. Magistrate Judge**

---

[18] Docket Entry 50, at 13.